**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| LINDA TREVINO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| ABSM, LLC d/b/a COASTAL DEBT RESOLVE, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Linda Trevino ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant ABSM, LLC d/b/a Coastal Debt Resolve ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

**NATURE OF THE ACTION**

1. This putative class action arises out of Defendant's systematic and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., and its implementing regulations adopted by the Federal Communications Commission ("FCC"), codified at 47 C.F.R. § 64.1200, *et seq*., and Defendant's concurrent violations of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. Through its enactment of the TCPA, Congress sought to protect consumers from intrusive and unwanted robocalls and text messages that invade privacy and disrupt daily life. *See*

*Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (noting TCPA's aim to curb "abusive telemarketing practices").

3.      As alleged herein, Defendant engaged in a pattern of unlawful telemarketing by targeting Plaintiff and the proposed Class ("Class," defined below) with unsolicited calls, causing widespread annoyance and harm, in violation of the TCPA and the FTSA including by:

a.      using an automatic telephone dialing system as defined in 47 U.S.C. § 227(a)(1) ("ATDS");

b.      using an automated system for the selection and dialing of telephone numbers in violation of Fla. Stat. § 501.059(8)(a);

c.      using an artificial or prerecorded voice without prior express written consent in violation of 47 U.S.C. § 227(b)(1)(A) and Fla. Stat. § 501.059(8)(a);

d.      contacting numbers registered on the National Do Not Call Registry ("National DNC") in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c); and

e.      failing to display its name and a valid originating telephone number on a caller ID, in violation of Fla. Stat. § 501.059(8)(b).

4.      Through this action, Plaintiff seeks an award of actual and statutory damages and/or liquidated damages to Plaintiff and the Class to compensate for the injuries inflicted by Defendant's misconduct, and injunctive relief to halt ongoing and future unlawful telemarketing practices in violation of the TCPA and FTSA.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction**. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. This Court has supplemental subject matter jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the TCPA claims and are so related that they form part of the same case or controversy.

6. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of this state and/or maintains its principal place of business in this state.

7. **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and Defendant is subject to personal jurisdiction in this district.

## PARTIES

8. Plaintiff is a natural person and, at all relevant times, was a resident of San Mateo County, California.

9. Defendant is a legal entity organized under the laws of Florida with its principal place of business in Broward County, Florida.

## TCPA BACKGROUND

10. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb the explosive growth of abusive telemarketing practices that invade consumer privacy and disrupt daily life. Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5) (1991). The TCPA

targets unwanted calls and text messages, such as those alleged herein, to protect consumers from unsolicited intrusions. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's response to "voluminous consumer complaints about abuses of telephone technology").

11.     The TCPA applies equally to unsolicited text messages, which cause identical privacy harms as calls. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023) ((Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)."). Violations of the TCPA cause concrete harm like invasion of privacy and annoyance, which Congress deemed actionable without additional injury. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo*, 578 U.S. at 341).

12.     The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an ATDS or an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). An ATDS is defined as equipment with the capacity to store or produce numbers using a random or sequential number generator and dial them. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021). The TCPA also restricts telemarketing calls to residential subscribers before 8 a.m. or after 9 p.m., local time, and to residential subscribers whose phone numbers are registered on the National DNC, without prior express invitation or permission, and makes such claims actionable after more than one call in a 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call

4

requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5). Cellular numbers registered on the DNC are presumed residential. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 (2003).

13.     Telemarketing calls require prior express written consent, defined as "an agreement, in writing, that bears the signature of the person called or texted that clearly and conspicuously authorizes no more than one identified seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). A called party may revoke prior express consent to receive calls or text messages by using "any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10).

14.     An entity can be vicariously liable under the TCPA for a call made on its behalf. Under those circumstances, the entity is deemed to have initiated the call through the person or entity. In a 2008 Declaratory Ruling, the FCC stated that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) ("The 2008 FCC Ruling thus has the force of law[.]").

15.     The FCC has also made clear that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or

constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

16. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5).

## FTSA BACKGROUND

17. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, complements the TCPA by protecting Florida residents from intrusive telemarketing calls and text messages that solicit consumer goods or services. The FTSA aims to safeguard privacy and prevent harassment through unsolicited "telephonic sales calls," defined as calls, texts, or voicemails, for selling, extending credit, or gathering information for such purposes. Fla. Stat. § 501.059(1)(j). The FTSA applies to telemarketers that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

18. The FTSA prohibits unsolicited telephonic sales calls and texts using an automated system for number selection or dialing, or a recorded message, without prior express written consent. Fla. Stat. § 501.059(8)(a). The FTSA defines "prior express written consent" as follows:

(g) "Prior express written consent" means a written agreement that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded

message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

19. The FTSA also bars telephonic sales calls to numbers on the Florida DNC, maintained by the Department of Agriculture and Consumer Services, without consent. Fla. Stat. § 501.059(4). Additionally, telemarketers must honor requests to stop calls, with violations actionable after continued calls or texts. Fla. Stat. § 501.059(5).

20. The FTSA also mandates that telephonic sales calls and text messages display a valid telephone number capable of receiving calls, connecting to the solicitor or seller's customer service during business hours. Fla. Stat. § 501.059(8)(b). This applies to all telephonic sales calls, regardless of consent, ensuring transparency and accountability. Violations occur when displayed numbers are non-functional or fail to connect, causing harm like confusion and inability to opt out.

21. The FTSA expressly applies to a "telephone call, text message, or voicemail." Fla. Stat. § 501.059(1)(j). For violations based on text messages, the FTSA requires that the plaintiff replied "STOP" and received further texts as a prerequisite to bringing a claim for "damages," but

7

a claim for injunctive relief is available, even without a "stop" request having been made. Fla. Stat. § 501.059(10)(c).

22.     The FTSA provides liquidated damages of $500 per violation, trebled to $1,500 for willful or knowing violations, injunctive relief, and reasonable attorney's fees. Fla. Stat. § 501.059(10), (11)(a).

## FACTUAL ALLEGATIONS

23.     At all relevant times Plaintiff was the residential subscriber and primary user of a cellular telephone number ending in 0661.

24.     This is Plaintiff's personal phone line that is used as Plaintiff's residential phone and is the primary means for friends and family to reach Plaintiff at home.

25.     This number is not associated with any business and has never been held out by Plaintiff to the public as business phone number

26.     Plaintiff does not maintain, and is not a subscriber to, any other phone line.

27.     Plaintiff registered this number on the National DNC at least 31 days prior to the events alleged herein.

28.     Plaintiff never gave prior express written consent, or prior express permission or invitation to receive calls from Defendant.

29.     Plaintiff did not transact business with Defendant within 18 months of receiving Defendant's calls.

30.     Plaintiff did not make an inquiry regarding Defendant's products or services within three months of receiving Defendant's calls.

31.     Defendant initiated or caused to be initiated numerous unlawful calls to Plaintiff's telephone number in violation of the TCPA and the FTSA.

32.     The following are non-exhaustive examples of some of the unlawful calls that Defendant initiated to Plaintiff, and upon information and belief, Plaintiff alleges that discovery will identify additional unlawful communications to Plaintiff's phone that were initiated by Defendant or on its behalf within the last four years.

33.     On April 17, 2025, at 15:38 p.m., Plaintiff received a call from 971-398-0094, which left the following voicemail:

> Hey this is Emma from the solutions I'm calling with some good news we have you prequalified for a $45,000 loan with very affordable monthly payments of around $569 this is a terrific option for you to pay off your high interest credit card debt and anything you may have in collections this is on a first come first serve basis so please call me back as soon as possible at 786-706-6645 as availability is limited and I don't wanna miss this great offer I look forward to speaking to you soon and have a blessed day...

34.     The callback number provided in the voicemail (786-706-6645) has been flagged as "spam" on the website phonespam.report by other consumers who received the same generic message as Plaintiff.





**Robocall**

📅 April 29, 2025   🗂 Unwanted Message

45000 loan offer

⚠



**Other Spam**

📅 April 24, 2025   🗂 Unwanted Call

Anyone know registered owner of this number. Let me know and I will submit it to atterney.

⚠



**Robocall**

📅 April 24, 2025   🗂 Unwanted Message

Offering $45,000 loan

⚠



**Debt Reduction**

📅 April 24, 2025   🗂 Unwanted Call

"Hey this is Emma from lead solutions I'm calling with some good news we have you prequalified for a $45,000 loan with very affordable monthly payments of around $569 this is a terrific option for you to pay off your high interest credit card debt and anything you may have in collections this is on a first come first serve basis so please call me back as soon as possible at 786-706-6645 as availability is limited and I don't wanna miss this great offer I look forward to speaking to you soon and have a blessed day…"

⚠



**Debt Reduction**

📅 April 23, 2025   🗂 Unwanted Call

Voice mail from "Emma" stating company name of Lead Solutions, offering debt consolidation loan. 1) I have absolutely no debt, and 2) I don't need money.

⚠



**Robocall**

📅 April 22, 2025   🗂 Unwanted Call

Offering 45k with low payments

⚠



**Robocall**

📅 April 19, 2025   🗂 Unwanted Call

Call claiming I am pre-approved for personal loan for $45k.

⚠

35.     Calls to this number are answered on behalf of "Coastal Debt Solutions."

36.     The Florida Secretary of State website shows that "Coastal Debt Solutions" is a fictitious name owned by Defendant.

37.     Defendant, doing business as "Coastal Debt Solutions," has previously been sued for violating the TCPA at least three times within the past 24 months.[1]

38.     The purpose of each solicitation was to promote or encourage the purchase of Defendant's goods or services.

39.     Based on the investigation of counsel, the telephone number displayed on the Caller ID for each of Defendant's calls was not capable of receiving telephone calls and connecting to Defendant or its telemarketing agents.

40.     When listening to the call, Plaintiff easily determined that the voice was prerecorded because: (1) there was a delay before the prerecorded voice started; (2) the voice was robotic and monotone; (3) the message was the same or substantially the same each time; and (4) the message was generic and impersonal and did not identify Plaintiff or any specific recipient. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 at 10-11 (N.D. Ga. June 23, 2016) ("When one receives a call it is a clear-cut fact easily discernible to any lay person whether or not the recipient is speaking to a live human being or is instead being subjected to a prerecorded message."). Plaintiff is able to provide the Court with audio files of Defendant's voicemails to demonstrate they are prerecorded.

41.     The following facts strongly suggest that Defendant used such an automated system: (1) Plaintiff never transacted business with Defendant; (2) Plaintiff never provided their

---

[1] *See Callier v. ABSM LLC*, No. 3:23-cv-230 (W.D.Tx., filed Jun. 9, 2023); *Abante Rooter and Plumbing, Inc. v. ABSM LLC*, No. 3:23-cv-3827 (N.D.Cal., filed Aug. 2, 2023); *Ewing v. ABSM LLC*, No. 3:23-cv-2261 (S.D.Cal., filed Dec. 12, 2023).

11

telephone number to Defendant; (3) Plaintiff heard a delay before any message or voice; and (4) the calls and texts used the same or similar generic message designed for *en masse* transmission.

42.     Defendant's unlawful calls caused Plaintiff and the Class members caused concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiff received the unlawful calls at inconvenient times, causing Plaintiff to stop to check Plaintiff's phone and waste time answering the calls to confirm they were not for an emergency purpose, and because Plaintiff was forced to spend time investigating the source of the calls and seeking out legal counsel to stop Defendant's harassing solicitations.

43.     Based upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all telephone solicitations advertising or promoting its goods and services, which show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiff and the Class members.

## CLASS ALLEGATIONS

44.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Classes:

**TCPA Autodialer Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received a telephone call (2) on their cellular phone (3) from Defendant or on its behalf (4) that was sent using the same equipment or type of equipment used to call Plaintiff, (5) and from whom Defendant does not possess evidence of prior express written consent to such calls.

**TCPA Prerecorded Voice Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received a telephone call (2) on their cellular phone (3) from Defendant or on its behalf (4) that used an artificial or prerecorded voice, (5) and from whom Defendant does not possess evidence of prior express written consent to such calls.

12

**TCPA National DNC Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received two or more telephone calls(2)in any 12-month period (2) from Defendant or on its behalf (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services (4) after their telephone number had been listed on the National DNC for at least thirty-one days, (5) and who did not transact business with Defendant within 18 months of receiving such telephone calls, and (6) who did not make an inquiry regarding Defendant's products or services within three months of receiving such telephone calls.

**FTSA Autodialer Class**: All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call (2) from Defendant or on its behalf (3) regarding Defendant's property, goods, and/or services (4) that was sent using the same equipment or type of equipment used to call Plaintiff, (5) and from whom Defendant does not possess evidence of prior express written consent to such calls.

**FTSA Recorded Message Class:** All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call (2) from Defendant or on its behalf (3) regarding Defendant's property, goods, and/or services (4) that was sent using a prerecorded message, (5) and from whom Defendant does not possess evidence of prior express written consent to such calls.

**FTSA Caller ID Class**: All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call (2) from Defendant or on its behalf (3) regarding Defendant's property, goods, and/or services (4) that failed to display a valid telephone number capable of receiving calls and connecting to Defendant.

45.     The Classes defined above are referred to herein individually or collectively as the "Class." Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

46.     Excluded from the Class are Defendant and its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

47.     *Numerosity*. The members of the Class are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown, Plaintiff alleges upon information and belief that each Class includes at least 40 members based on the nature and

13

objective of telemarketing campaigns, which are designed to reach a large volume of potential customers (called "leads" in the industry), in order to convert a small percentage of those leads into actual customers to ultimately drive increased sales to the company that engage in telemarketing. Class members are ascertainable through objective criteria, such as Defendant's call and text records, which Defendant maintains, allowing identification through discovery.

48.     ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a.      Whether Defendant used an automatic telephone dialing system as defined in 47 U.S.C. § 227(a)(1) to initiate the calls at issue;

b.      Whether Defendant used an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA to initiate the calls at issue;

c.      Whether Defendant used an artificial or prerecorded voice to make the calls at issue;

d.      Whether Defendant contacted numbers registered on the National DNC in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c);

e.      Whether Defendant's calls introduced an advertisement;

f.      Whether Defendant's calls constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

g.      Whether Defendant's calls constitute "telephonic sales calls" under the FTSA;

h.      Whether Defendant failed to display its name and a valid originating telephone number on the caller ID in violation of Fla. Stat. § 501.059(8)(b);

i.      Whether Defendant's conduct was knowing and/or willful;

14

j.       Whether Plaintiff and the Class are entitled to statutory damages and/or liquidated damages and the amount of such damages; and

k.       Whether Defendant should be enjoined from further violations of law as alleged herein.

49.     ***Typicality***. Plaintiff's claims are typical of the Class members' claims under Fed. R. Civ. P. 23(a)(3) because they arise from the same course of conduct by Defendant and are based on the same legal theories. Plaintiff and Class members suffered similar harms, and Plaintiff is not subject to unique defenses.

50.     ***Adequacy of representation***. Plaintiff will fairly and adequately protect the Class's interests under Fed. R. Civ. P. 23(a)(4). Plaintiff has retained counsel experienced in complex consumer class actions and TCPA litigation and intends to vigorously prosecute this action. Plaintiff has no interests antagonistic to the Class.

51.     ***Superiority***. A class action is superior to other methods for fairly and efficiently adjudicating this controversy under Fed. R. Civ. P. 23(b)(3). Individual litigation is economically infeasible due to the high costs relative to individual, making separate lawsuits impractical. Class treatment avoids burdening the court system with numerous individual cases and prevents inconsistent rulings or standards for Defendant. For example, one court might enjoin Defendant's conduct while another might not, creating conflicting obligations. Class members are unlikely to pursue individual claims due to the modest damages relative to litigation costs.

52.     In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfy the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### COUNT 1

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the TCPA Autodialer Class)**

53. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above as though fully set forth herein.

54. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

16

55.     It is also a violation of the TCPA's implementing regulations adopted by the FCC to "initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii).

56.     Additionally, it is a violation of the TCPA's implementing regulations to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2).

57.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

58.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated calls to the cellular telephone numbers of Plaintiff and the Class using an automatic telephone dialing system within the meaning of the TCPA.

59.     Defendant did not have prior express written consent—or any consent—to make such calls to Plaintiff and the Class using an automatic telephone dialing system.

60.     Defendant, therefore, violated Section 227(b)(1)(A)(iii) and the TCPA's implementing regulations in Sections 64.1200(a)(1)(iii) and (a)(2).

61.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

62.     Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

17

63.     Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

64.     Because Defendant knew or should have known that it was using an automatic telephone dialing system to initiate calls without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

65.     Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

**COUNT 2**

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the TCPA Prerecorded Voice Class)**

66.     Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Count, as though fully set forth herein.

67.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using…an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

68.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf— initiated telephone calls to the cellular telephone numbers of Plaintiff and the Class using an artificial or prerecorded voice.

69.     Defendant did not have prior express written consent to place make such calls to Plaintiff and the Class.

70.     Defendant, therefore, violated Section 227(b)(1)(A)(iii).

18

71.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

72.     Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

73.     Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

74.     Because Defendant knew or should have known that it was placing calls using an artificial or prerecorded voice without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

75.     Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

## COUNT 3

**Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National DNC Class)**

76.     Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

77.     The TCPA established a National DNC Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

78.     The TCPA's implementing regulations adopted by the FCC provide that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who

19

do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

79.     The law "presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *In Re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd. 14014, 14038–39 (2003).

80.     A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(c)]." 47 U.S.C. § 227(c)(5).

81.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to the residential telephone lines of Plaintiff and the Class members while their telephone numbers were registered on the National DNC.

82.     Defendant's telephone calls to Plaintiff and the Class members constitute "telephone solicitations" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

83.     Defendant did not have prior express written consent to initiate telephone solicitations to Plaintiff and the Class.

84.     Defendant did not have prior express consent to initiate telephone solicitations to Plaintiff and the Class.

85.     Defendant did not have prior express invitation or permission to initiate telephone solicitations to Plaintiff and the Class.

86. Plaintiff did not transact business with Defendant within 18 months of Defendant's telephone solicitations.

87. Plaintiff did not make an inquiry regarding Defendant's products or services within three months of Defendant's telephone solicitations.

88. As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

89. Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(c)(5)(A).

90. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone solicitation that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(c)(5)(B).

91. Because Defendant knew or should have known that it was initiating telephone solicitations to numbers on the National DNC without the requisite level of consent, Defendant's violations of the TCPA were willful or knowing.

92. Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone solicitation that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

## COUNT 4

### Violation of the FTSA, Fla. Stat. § 501.059(8)(a)
### (On Behalf of Plaintiff and the FTSA Autodialer Class)

93. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

94. The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and

21

dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

95. As alleged herein, Defendant—or third-parties acting on Defendant's behalf— made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers.

96. Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

97. Defendant's calls to Plaintiff and the Class constitute "unsolicited telephonic sales calls" under the FTSA because they were not made (i) in response to an express request of the person called; or (ii) to a person with whom the telephone solicitor has a prior or existing business relationship. Fla. Stat. § 501.059(1)(k).

98. Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

99. Defendant does business in this state.

100. Thus, Defendant's unsolicited telephonic sales calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

101. Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

102. Plaintiff and the Class are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

103.    Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendant placed using an automated system for the selection and dialing of telephone numbers in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

104.    Because Defendant knew or should have known that it was using an automated system for the selection and dialing of telephone numbers to place unsolicited telephonic sales calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

105.    Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

106.    Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

**COUNT 5**

**Violation of the FTSA, Fla. Stat. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Recorded Message Class)**

107.    Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

108.    The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves…the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

109. As alleged herein, Defendant—or third-parties acting on Defendant's behalf—made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class that involved the playing of a recorded message when a connection is completed.

110. Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

111. Defendant's calls to Plaintiff and the Class constitute "unsolicited telephonic sales calls" under the FTSA because they were not made (i) in response to an express request of the person called; or (ii) to a person with whom the telephone solicitor has a prior or existing business relationship. Fla. Stat. § 501.059(1)(k).

112. Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using a prerecorded message, as required by Section 501.059(8)(a).

113. Defendant does business in this state.

114. Thus, Defendant's unsolicited telephonic sales calls to Plaintiff and the Class violated Section 501.059(8)(a) of the FTSA.

115. Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

116. Plaintiff and the members of the Class are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

117. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendant placed using a recorded message in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

118.   Because Defendant knew or should have known that it was using a prerecorded message to place unsolicited telephonic sales calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

119.   Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

120.   Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

## COUNT 6

**Violations of the FTSA, Fla. Stat. § 501.059(8)(b)**
**(On behalf of Plaintiff and the FTSA Caller ID Class)**

121.   Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

122.   It is a violation of the FTSA for "any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call." Fla. Stat. § 501.059(8)(b).

123.   Further, "[i]f a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed." *Id.*

124. As alleged herein, Defendant made a telephonic sales call or caused a telephonic sales call to be made but failed to transmit or caused not to be transmitted the originating telephone number and a telephone number capable of receiving telephone calls and connecting to Defendant or its telemarketing agents.

125. Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

126. Defendant does business in this state.

127. Thus, Defendant violated the Section 501.059(8)(b) of the FTSA.

128. Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

129. Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

130. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephonic sales call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

131. Because Defendant knew or should have known that its calls failed to transmit or caused not to be transmitted the originating telephone number and a telephone number capable of receiving telephone calls and connecting to Defendant or its telemarketing agents, Defendant's violations of the FTSA were willful or knowing.

132. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

133. Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, call logs, text message records, or other itemizations associated with the allegations herein, including those in the possession of any vendors, individuals, or companies contracted, hired, or directed by Defendant to assist in initiating the alleged unlawful calls. This includes but is not limited to records identifying telephone numbers contacted, dates and times of calls, consent documentation, and do-not-call requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A. An order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B. An award to Plaintiff and each Class member of actual damages;

C. An award to Plaintiff and each Class member of statutory damages of $500 per violation of the TCPA, trebled to $1,500 for knowing or willful violations;

D. An award to Plaintiff/Plaintiffs and each Class member of liquidated damages of $500 per violation of the FTSA, trebled to $1,500 for knowing or willful violations;

E. An injunction prohibiting Defendant from further violations of the TCPA and the FTSA;

27

F.     An award to Plaintiff and the Class of their reasonable attorney's fees as available under the law;

G.     An award to Plaintiff and the Class of their costs of this action as available under the law;

H.     An award to Plaintiff and the Class of post-judgment interest as available under the law;

I.     Any such further and other relief as the Court deems just and equitable.


Dated: May 7, 2025                                          Respectfully submitted,


                                                           /s/ Christopher Gold
                                                           Christopher Gold, Esq.
                                                           Florida Bar No. 088733
                                                           **GOLD LAW, PA**
                                                           350 Lincoln Rd., 2nd Floor
                                                           Miami Beach, FL 33139
                                                           Tel: 305-900-4653
                                                           chris@chrisgoldlaw.com

                                                           *Counsel for Plaintiff and the Proposed Class*

28